**TELECO OILFIELD SERVICES, INC., Plaintiff,**

v.

**SKANDIA INSURANCE COMPANY, LTD., Storebrand-Norden Insurance Company, Ltd., Samvirke Insurance Company, Ltd., Norges Brannkasse, Forsikringsaktieselskabet Vesta and Polaris Assurance A/S, Defendants.**

**Civ. A. No. N–85–186 (RCZ).**

United States District Court,
D. Connecticut.

Jan. 20, 1987.

---

John Crosskey, Kenneth W. Ritt, Day, Berry & Howard, Stamford, Conn., Jeff H. Galloway, Norman C. Kleinberg, Hughes, Hubbard & Reed, New York City, Joy Beane, Day Berry & Howard, Stamford, Conn., for plaintiff.

Jay G. Safer, LeBoeuf, Lamb, Leiby & McRae, New York City, for defendants.

## RULING ON MOTION TO DISMISS

ZAMPANO, Senior District Judge.

In this diversity action brought by Teleco Oilfield Services, Inc. ("Teleco"), a Delaware corporation with its headquarters in Connecticut, against Skandia Insurance Co. Ltd., Samvirke General Insurance Co. Ltd., Norges Brannkassee, Forsikringsaktiesel-skabet Vesta and Polaris Assurance A/S (the "Scandinavian Insurers"),[1] multi-national insurance companies, with their headquarters in Scandinavia, the plaintiff seeks damages for the defendants' alleged breach of contract and bad faith tortious acts arising from an insurance policy.

Each of the Scandinavian Insurers has moved to dismiss Teleco's complaint on the grounds that this Court lacks personal jurisdiction over the defendants and on the basis of *forum non conveniens.*

## I. FACTS

Teleco manufacturers and leases "downhole assemblies" ("DHAs") that are used as measuring devices primarily on offshore rigs. In early 1982, Teleco sought the services of John Tully, a vice-president of Marsh & McLennan, Inc. in Hartford, Connecticut ("M & M Hartford") to locate an insurer who would underwrite a policy for Teleco's DHAs (the "First Policy"). Mr. Tully arranged for the placement of a policy with the defendants, the Scandinavian Insurers (with the exception of defendant Storebrand-Norden), through Marsh & McLennan Scandinavia ApS ("M & M Scandinavia").

Teleco incurred a loss involving the DHAs insured under the First Policy which resulted in the Scandinavian Insurers' payment to Teleco of $637,200. The claim checks were drawn on M & M Hartford's bank account and were delivered to Teleco in Connecticut.

In the summer of 1983, Teleco requested that Mr. Tully of M & M Hartford place another policy (the "Second Policy") in order to provide Teleco with property insurance for its DHAs, while in use "anywhere in the world," for the period August 6, 1983 through August 5, 1984. The agreed insured value of each DHA was $180,000, subject to a deductible clause, and a $3.6 million aggregate limit of liability. During the period of the Second Policy, forty-eight DHAs were lost which resulted in a claim under that policy of $3.6 million which is the focus of this suit.

Under the agreed upon terms of the Second Policy, Teleco's obligations included the payment of premiums, quarterly reporting of "days of service" and losses, and

---

**1.** Skandia has its principal place of business in Stockholm, Sweden; Storebrand-Norden, Samvirke, Norges, and Polaris have their principal place of business in Oslo, Norway; and Vesta has its principal place of business in Bergen, Norway.

cooperation with the Scandinavian Insurers in the investigation and adjustment of claims. Conversely, the Scandinavian Insurers were obligated to pay for genuine claims of losses and the refunding of any excess deposit premiums. The Scandinavian Insurers also had the right to inspect the books of Teleco to confirm the accuracy of claims and loss information.

During the course of the Second Policy, premium checks were mailed from Connecticut by Teleco to M & M Scandinavia. When wire transfers were used, instead of premium checks, such transfers were initiated from Connecticut. In the event of loss, the Scandinavian Insurers would make payment via M & M Hartford to Teleco in Connecticut. Quarterly loss reports and the formal "proof of loss" statements were prepared by Teleco in Meriden, Connecticut and delivered to M & M Hartford for the information of the Scandinavian Insurers. Furthermore, the Scandinavian Insurers exercised their right under the policy to inspect Teleco's books in Connecticut.

## II. PERSONAL JURISDICTION

With regard to the Scandinavian Insurer's motion to dismiss Teleco's complaint on the ground that the Court lacks personal jurisdiction, Teleco claims that this Court can assert jurisdiction pursuant to the various subsections of the Connecticut long-arm statute. Conn.Gen.Stat. § 33–411.[2] It is well-established in this Circuit that the Court must follow a two-step analysis: (1) whether the facts of this case make the Scandinavian Insurers amenable to suit in Connecticut under the statute, and (2) if so, whether the exercise of jurisdiction comports with due process. *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2nd Cir.1963).

The burden of establishing jurisdiction over the Scandinavian Insurers is upon Teleco by a preponderance of the evidence. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2nd Cir. 1985); *Standard Tallow Corp. v. Jowdy*, 190 Conn. 48, 54, 459 A.2d 503, 507 (1983). However, until an evidentiary hearing is held, the plaintiff "need make only a *prima facie* showing that jurisdiction exists ... notwithstanding a controverting presentation by the moving party." *Hoffritz*, 763 F.2d at 57. Furthermore, all ambiguities in the pleadings and affidavits must be construed in the light most favorable to plaintiff. *Id.*

The basis upon which Teleco has brought this action against the Scandinavian Insurers is the alleged breach of an insurance contract and bad faith tortious acts arising from the failure to pay Teleco's claim for insurance proceeds. The Scandinavian Insurers would be within the reach of the Connecticut long-arm statute, if Teleco's cause of action arises out of a contract "to be performed in this state" or "tortious conduct" from "repeated activity or single acts" in this state. Conn.Gen.Stat. § 33–411(c)(1) and (4).[3]

### A. *Agency*

Before analyzing the applicability of Connecticut's long-arm statute, it is necessary to establish the role of M & M Hartford and M & M Scandinavia in these transactions. While the Scandinavian Insurers strenuously argue that M & M Hartford

---

**2.** Teleco also claims that this Court has jurisdiction over the defendants pursuant to the long-arm jurisdiction of the Unauthorized Insurers Act. Conn.Gen.Stat. § 38–263 et seq. Because the Court finds jurisdiction under the general Connecticut long-arm statute, Conn.Gen.Stat. § 33–411, the Court need not consider this additional jurisdictional claim put forth by the plaintiff.

**3.** Conn.Gen.Stat. § 33–411(c) states in pertinent part:

Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, or any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; ... or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

and M & M Scandinavia are agents of Teleco, it is clear that such a view pertains only to the procurement of the policy and not to the execution of the terms of the policy. *See* 3 *Couch on Insurance* 2d § 25:94, at 447 (rev. ed. 1984). An insurance broker may act for the insured in order to obtain a policy, while "the broker generally acts for the insurer in delivering the policy and in collecting and remitting the premiums." *Transamerica Interway v. Commercial Union Assurance Co.*, 97 F.R.D. 419, 421 (S.D.N.Y.1983); 3 *Couch on Insurance* 2d § 25:94, at 447; *accord, id.* §§ 25:95–96, at 454–56.

In essence, in the course of the procurement and the subsequent performance of an insurance contract, the broker acts as a dual agent. At first the broker is the agent of the insured, and then the agent of the insurer. Connecticut has codified this common law rule that, after the issuance of the policy, a broker acts as the insurer's agent in collecting premiums. *See* Conn. Gen.Stat. § 38–90a (payment of premiums by an insured to a broker is deemed payment to the insurer).[4] Similarly, in the instant case, M & M Hartford and M & M Scandinavia worked to obtain the policy for the plaintiff, *but* M & M Scandinavia also collected the premiums for the defendants.

**B.** *Conn. Gen.Stat. § 33–411(c)(1)*

■ With respect to the applicability of Conn.Gen.Stat. § 33–411(c)(1), the Scandinavian Insurers argue that a plaintiff's actions do not serve as a valid basis for establishing jurisdiction over defendants, citing for this proposition *Bross Utilities Service Corp. v. Aboubshait*, 489 F.Supp. 1366 (D.Conn.), *aff'd mem.*, 646 F.2d 559 (2nd Cir.1980). The *Bross* opinion does not hold that only contracts which explicitly require performance, or only defendants who actually perform, in Connecticut are

covered by § 33–411(c)(1). The court merely states that if all evidence points to *performance in another jurisdiction*, and the plaintiff failed to allege any contrary provision in the contract, then there would be no basis for jurisdiction in the plaintiff's proposed forum. *But see Glendinning Cos. v. Codesco, Inc.*, 3 Conn.L.Trib. No. 40, at 16 (Super.Ct.1977). Nevertheless, this Court has previously held that the relevant "performance" under Conn.Gen.Stat. § 33–411(c)(1) need not be that of the defendant alone. *Clemco Corp. v. Frantz Manufacturing Co.*, 609 F.Supp. 56, 57 (D.Conn. 1985) (citing with approval, *Publications Group, Inc. v. American Soc. of Heating, Refrigerating and Air-Conditioning Engineers, Inc.*, 566 F.Supp. 316 (D.Conn. 1983) (Eginton, J.) and *Bowman v. Grolsche Bierbrouwerij, B.V.*, 474 F.Supp. 725 (D.Conn.1979) (Daly, C.J.).[5]

■ In *Bowman*, Chief Judge Daly noted "[t]here is no indication that the Connecticut legislature intended that the language 'to be performed in the state' should be given a limited construction to require performance in the state by the party over whom jurisdiction is sought. It would not be appropriate, therefore, for this Court to impose such a limitation upon the statute." 474 F.Supp. at 731–32; *accord Clemco*, 609 F.Supp. at 57. In the case *sub judice*, Teleco's payment of premiums from Connecticut constitutes actual and substantial performance of the terms of the contract with the Scandinavian Insurers in this state. Furthermore, if the Scandinavian Insurers had paid the disputed claim which is the subject of this suit, Teleco would have received its claim check in Connecticut, as it did under the First Policy.

**C.** *Conn. Gen.Stat. § 33–411(c)(4)*

■ Section 33–411(c)(4) also subjects the Scandinavian Insurers to the jurisdic-

---

4. Conn.Gen.Stat. § 38–90a states:

    Any payment made by or on behalf of an insured to any broker for policies of insurance which have been issued to such broker for delivery to the insured or issued directly to the insured on the order of such broker shall, in controversies between the insured and the company, be deemed to have been paid to the company.

5. These decisions reject the reasoning in *Glendinning Cos. v. Codesco, Inc.*, 3 Conn.L.Trib. No. 40, at 16 (Super.Ct.1977) that only a *defendant's* performance is relevant to a determination of whether the contract is one "to be performed in the state."

tion of the Court, if they have engaged in "tortious conduct" in Connecticut. Only a single act of tortious conduct need be shown in order to invoke § 33–411(c)(4). Teleco, however, has alleged in its complaint several tortious acts that occurred in Connecticut. The second, third and fifth counts of the complaint respectively plead a *prima facie* case for relief on the basis of the defendants' alleged breach of good faith duty, and their alleged violations of the Connecticut Unfair Insurance Practices Act, Conn.Gen.Stat §§ 38–60 and 38–61, and the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a *et seq. See Doyle v. St. Paul Fire & Marine Insurance Co.*, 583 F.Supp. 554, 557 (D.Conn. 1984). The plaintiff alleges that the defendants' tortious conduct included: (a) the refusal to pay Teleco's claims without proper cause, (b) failure to provide a reasonable explanation promptly of the basis for the denial of coverage under Second Policy, (c) the lack of a legal basis for disclaiming coverage, and (d) the misrepresentation of the policy's coverage at the time the policy was negotiated and issued. Again, the Court need not delve into the full merits of these allegations, *Hoffritz*, 763 F.2d at 57, but must assess whether the conduct underlying the plaintiff's alleged violations occurred in Connecticut.

■■■ First, because claims under the Second Policy were to be paid in Connecticut, the alleged failure to make such a payment is deemed to have occurred in Connecticut. Second, the defendant's reasonable explanation and communication of the legal basis for denial of coverage, which the plaintiff alleges was absent, would also have been transmitted to Connecticut. And third, the alleged misrepresentations of coverage, both active and passive, would have been made by way of communications sent to and received by Teleco from the defendants in Connecticut.

*See McFaddin v. National Executive Search, Inc.*, 354 F.Supp. 1166, 1171 (D.Conn.1973) (false representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under § 33–411(c)(4)). Thus, the Scandinavian Insurers' alleged tortious conduct is deemed by the Court to have occurred in Connecticut.[6]

### D. *Due Process*

■■■ Under the principles set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny, it is clear that the Scandinavian Insurers have sufficient contacts with Connecticut to satisfy due process requirements. Among other factors, Skandia has issued at least 31 direct insurance and 29 reinsurance agreements with Connecticut insurance companies (as well as reinsurance contracts with at least 17 companies licensed, but not otherwise resident, in Connecticut). Samvirke has had at least 8 treaty reinsurance agreements with Connecticut insurers. Since 1982, Norges has written at least four policies of direct insurance and 10 reinsurance agreements with Connecticut insurers (Norges has entered into reinsurance contracts with at least 12 other companies licensed, but not otherwise resident, in Connecticut); Vesta has written two policies of direct insurance in Connecticut and has been a party to at least two reinsurance contracts with Connecticut insureds. Polaris, now part of Vesta, has issued five policies of direct insurance to Connecticut insureds and has participated in four reinsurance agreements with Connecticut insureds since 1982. The premiums collected by each of the defendants from these various insurance contracts in Connecticut are considerable. For instance, Skandia was paid aggregate premiums for its 31 policies of

---

6. Although the Court finds jurisdiction under Conn.Gen.Stat. § 33–411(c)(1) and (4), the Court is also persuaded by plaintiff's contention that the defendants are subject to the jurisdiction of the Court under Conn.Gen.Stat. § 33–411(b), the provision dealing with the transaction of business without an appropriate license. Under § 33–411(b), a defendant may be held to have

transacted business in the forum even though it is not licensed in Connecticut, nor maintains any office, real estate, bank account, telephone listing, representation or agent in the state. *Chemical Specialties Sales Corp. v. Basic, Inc.*, 296 F.Supp. 1106, 1108 (D.Conn.1968); *accord Eutectic Corp. v. Curtis Noll Sales Corp.*, 342 F.Supp. 761, 762 (D.Conn.1972).

direct insurance in Connecticut: approximately $1,720,000 in 1984, $1,610,000 in 1983, and $724,022 in 1982 (this does not even include the premiums from reinsurance contracts in Connecticut).

In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Supreme Court held that a single contract of life insurance had a "substantial" connection with the forum state sufficient to confer jurisdiction over a foreign insurance company. *Id.* at 222, 78 S.Ct. at 200–01. The insurance company in *McGee* had "never solicited or done any insurance business in [the forum state] apart from the policy involved." *Id.* Premiums for the policy were mailed from the forum; and, the insured was a resident of the forum. *Id.* at 221–22, 78 S.Ct. at 200–01. Based upon these facts, among others, the Supreme Court in *McGee* found that the plaintiff's forum state had "a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims." *Id.* at 223, 78 S.Ct. at 201.

With regard to due process considerations, the case before this Court is more compelling than *McGee*. Similar to *McGee*, premiums were mailed from the forum, and the insured was a resident of the forum. However, in addition, the Scandinavian Insurers were involved in numerous other contracts in the State of Connecticut. In 1984 when they allegedly refused to pay the claims which gave rise to this suit, the defendants were "purposefully avail[ing] [themselves] of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The exercise of jurisdiction by this Court is consistent with due process and "does not offend 'traditional notions of fair play and substantial justice,'" *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158.

For the above stated reasons, the defendants' motion to dismiss on the basis of lack of personal jurisdiction is denied.

### III. FORUM NON CONVENIENS

If personal jurisdiction is found, the Scandinavian Insurers alternatively move this Court to dismiss this case on the basis of the *forum non conveniens* doctrine. The criteria for such a dismissal have been carefully delineated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The Supreme Court enumerated the "private" and "public" interests that a district court should consider. The "private" interests are: (1) the "relative ease" of sources of proof; (2) the availability of witnesses; and, (3) the practical considerations of holding a trial. The "public" interests are: (1) any "local interest"; (2) the appropriateness of trial in the forum familiar with the applicable state law; and (3) the administrative difficulties engendered by congested courts. *Id.* at 508–09, 67 S.Ct. at 843.

In *Gulf Oil*, the Supreme Court made it clear that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508, 67 S.Ct. at 843; *accord Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 255, 102 S.Ct. 252, 258, 265–66, 70 L.Ed.2d 419 (1981). In the instant case, the defendants, the Scandinavian Insurers, have not put forth any "private" interest reasons other than inconveniences engendered in litigation generally. Such concerns are not of sufficient weight to tip the scales in the defendants' favor.

▇▇▇▇ With regard to the "public" interest criteria set forth in *Gulf Oil*, the Scandinavian Insurers argue that the laws of "Sweden or Norway" should apply, and therefore, the case should be dismissed from this forum. The insurance contract which gives rise to this litigation does not contain a choice of law provision. The general rule, in Connecticut, then is for the Court to look to (1) the place where the contract was made *or* (2) the place of operative effect or performance. *Grand Sheet Metal Products Co. v. Aetna Casualty and Surety Co.*, 500 F.Supp. 904, 908–09 (D.Conn.1980). As the Court has stated above, the payment of premiums by the plaintiff Teleco is a significant act of performance in Connecticut. Furthermore, any claims to be paid by the Scandinavian

Insurers would be paid to Teleco in Connecticut. The locus of the "beneficial operation and effect," *id.* at 909, under the subject insurance policy is clearly Connecticut, and therefore the law of the State of Connecticut should apply.

Accordingly, the defendants' motion to dismiss on the basis of *forum non conveniens* is also denied.

SO ORDERED.