Charyn DAVID, Plaintiff,

v.

Michael WEITZMAN, Harold Vernon, Steven Spreigel, The Village of Boca Rio, Inc., and Builders of Florida, Inc., Defendants.

Civ. No. N–87–237(JAC).

United States District Court, D. Connecticut.

Dec. 14, 1987.

Arie E. David, North Haven, Conn., for plaintiff.

Frank W. Murphy, Norwalk, Conn., for defendants.

**RULING ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SANCTIONS**

JOSÉ A. CABRANES, District Judge:

## BACKGROUND

The principal question presented is whether this court has personal jurisdiction

over defendants whose sole contact with the forum state was to send into it by mail and telephone fraudulent misrepresentations. The action arises out of negotiations to purchase a condominium in Boca Rio, Florida. The plaintiff is a citizen and resident of Connecticut; the defendants—both individual and corporate—are citizens of Florida. Jurisdiction in grounded in diversity of citizenship, 28 U.S.C. § 1332. Plaintiff claims that defendants—by false representations communicated to plaintiff through use of the telephone and mails from Florida to Connecticut—induced the plaintiff to make a deposit on and a contract to buy a condominium, promising 95% financing which they never intended to provide, demanding an additional down payment of 15% once a deposit was made, and then refusing to refund the deposit. *See* Complaint (filed June 9, 1987) ¶¶ 3–4.

Defendants have moved to dismiss pursuant to Rule 12(b)(2) Fed.R.Civ.P., alleging this court's lack of *in personam* jurisdiction over any of the defendants. They assert that neither the Connecticut long-arm statute nor the Due Process Clause of the United States Constitution authorizes a suit against them in the federal district court for Connecticut. *See* Defendants' Memorandum in Support of Motion to Dismiss (filed Aug. 14, 1987) ("Defendants' First Memorandum") at 4–6 and Defendants' Memorandum in Support of Motion to Dismiss and in Opposition to Motion for Sanctions (filed Oct. 2, 1987) ("Defendants' Second Memorandum") at 4–6.

Plaintiff has opposed the motion to dismiss and filed a Motion to Sanction Defendants under Rule 11 of the Federal Rules of Civil Procedure (filed Sept. 9, 1987) ("Motion to Sanction Defendants") charging that defendants' motion to dismiss is based upon an "outright lie," the lie being that the contract was signed in Florida, and the purpose of the lie being to defeat jurisdiction over this action, which defendants deliberately mischaracterized as a contract action. *See* Plaintiff's Memorandum of Law in Opposition of [sic] Motion to Dismiss and in Support of Motion to Sanction Defendants ("Plaintiff's Memorandum in Opposition") (filed Sept. 9, 1987) at 3, 5.

Neither party having requested oral argument, and the court not believing that such argument was necessary to a just disposition of the issues, the court has exercised its discretion to decide these motions "on the papers." *See Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2d Cir.1981); Rule 9(a)(1), Local Rules of Civil Procedure (D.Conn.). Both the defendants' Motion to Dismiss and the Plaintiff's Motion to Sanction Defendants are hereby denied.

### I. *Motion To Dismiss*

It is well established that the existence of personal jurisdiction over an out-of-state defendant in a diversity case depends upon a two-tiered inquiry. The first tier involves the threshold question whether the federal district court has jurisdiction under the forum state's law. If it does, the second tier involves the question whether the exercise of personal jurisdiction, allowed by state law, would violate the Due Process Clause of the United States Constitution. *See Air Kaman, Inc. v. Penn–Aire Aviation, Inc.*, 542 F.Supp. 2, 3 (D.Conn.1981).

### a. *The statutory basis for jurisdiction*

Both corporate and individual defendants are named in this action, and jurisdiction over them is governed respectively by Conn.Gen.Stat. §§ 33–411 and 52–59b. It is clear from the Complaint, and even clearer from plaintiff's Memorandum in Opposition, that this is a tort action and jurisdiction should be considered specifically in light of Conn.Gen.Stat. §§ 33–411(c)(4)[1]

---

**1.** Section 33–411(c), Service of Process on foreign corporation, provides in pertinent part:
Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: .... (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

and 52–59b(a).[2] The first of these provisions gives personal jurisdiction over foreign corporations in actions arising "out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance." The second, which applies to nonresident individuals, gives jurisdiction over such individuals who commit tortious acts *within* the state, *see* § 52–59b(a)(2), or, under certain circumstances, who commit tortious acts *outside* the state which have consequences inside the state, *see* § 52–59b(a)(3). The latter subsection can be invoked only where the defendant regularly does or solicits business in this state, or where the consequences in state are reasonably foreseeable *and* the defendant derives substantial revenues from interstate or international commerce. In the absence of a specific reference invoking § 52–59b(a)(3), and in the absence of allegations of fact which would implicitly invoke it, the court assumes that jurisdiction over the individual defendants is asserted under § 52–59b(a)(2), which is analogous to § 33–411(c)(4), governing tort actions against foreign corporations. Both of these provisions govern tortious acts or

conduct in the state.[3] The following discussion therefore does not distinguish between the individual and the corporate defendants.

Since defendants' tortious conduct must have been committed within the state for jurisdiction to exist, and since the only tortious conduct alleged here is fraudulent misrepresentation sent into the state from Florida by mail and telephone, the lynchpin of the action is the proposition that such conduct is conduct "within the state," as that phrase is used in Connecticut's long-arm statute. In the authority relied upon by plaintiff, *McFaddin v. National Executive Search, Inc.*, 354 F.Supp. 1166, 1171 (D.Conn.1973) (Newman, J.), that proposition is arguably more dictum than holding. However, a more recent case in this district, relying on *McFaddin's* reasoning, holds that jurisdiction exists under Conn. Gen.Stat. § 33–411(c)(4) where the defendant sends fraudulent misrepresentations into the state, because such conduct is deemed to have occurred *within* the state. *See Teleco Oilfield Services, Inc. v. Skandia Insur. Co.*, 656 F.Supp. 753, 758 (D.Conn.1987) (Zampano, J.)[4]

**2.** Section 52–59b(a) provides in pertinent part:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: .... (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce....

**3.** The court recognizes a slight difference in the wording of these two subsections. Section 33–411(c)(4) permits jurisdiction over foreign corporations in suits arising out of "tortious conduct in this state." Section 52–59b(a)(2) permits jurisdiction over non-resident individuals in suits arising from the commission of "a tortious act within the state." No legislative history or other authority has been brought to the court's

attention to suggest that there is a significant difference between the two quoted phrases. Absent any indication to the contrary from the Connecticut courts, we regard this difference in wording—that is, between "tortious conduct in this state" and "a tortious act within the state"— as of no significance.

**4.** No Connecticut case has been found which either approves or disapproves of this reading of the statute. The same conclusion was reached in *Murphy v. Erwin Wasey, Inc.*, 460 F.2d 661 (1st Cir.1972), concerning a statute which was explicitly considered analagous to the Connecticut statute. *Accord, Vishay Intertechnology, Inc. v. Delta Intern. Corp.*, 696 F.2d 1062, 1065 (4th Cir.1982) (holding that deceptive phone call from out of state is conduct occurring in state for statutory purposes). *But see Margoles v. Johns*, 483 F.2d 1212 (D.D.C.1973) (disapproving of *Murphy* as a matter of statutory construction). The New York courts, also working with a similar statute, *see* N.Y.Civ.Prac.Laws & Rules § 302(a)(2) and (3), have seemed to be of more than one mind about its interpretation in circumstances like the ones here presented. Although some decisions take the approach we are adopting here, *see, e.g., Polish v. Threshold Technology, Inc.*, 72 Misc.2d 610, 340 N.Y.S.2d 354

■ Under this rule, the Complaint and plaintiff's Affirmation in Opposition of [sic] Motion to Dismiss and in Support of Motion to Sanction Defendants (filed Sept. 9, 1987) ("Plaintiff's Affirmation") must be read to allege tortious conduct within the state sufficient to establish jurisdiction under the statute. While plaintiff must eventually carry the burden of proving jurisdictional facts, *see* 2A Moore's Federal Practice ¶ 12.07[2.–2] (2d ed.1987), when a motion to dismiss is decided on the papers, plaintiff need only show a prima facie case of jurisdiction, such showing being sufficient regardless of any controverting presentation by the party moving to dismiss. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir.1981). In any event, it is not clear from the affidavits of the defendants that the material they present *is* contraverting in any relevant way. For example, the affidavit for the corporate defendants denies transacting or soliciting business in Connecticut, but the only assertion having arguably to do with jurisdiction of a complaint of tortious conduct under § 33–411(c)(4) is that, to the best of the affiant president's information and belief, neither corporate defendant has committed a tortious act in Connecticut. *See* Affidavit of Stephen Leon, Defendants'

Second Memorandum (filed Oct. 2, 1987), Exhibit C. In view of the fact that defendants contest the legal proposition that fraudulent misrepresentations mailed or telephoned into Connecticut is tortious conduct *in* Connecticut, *see* Defendants Second Memorandum at 5–6, the affidavit's denial of tortious conduct in the state, absent a denial of any communications to plaintiff in state, represents more a legal conclusion than a denial of a factual basis for jurisdiction.[5] For the reasons stated above, and because at this stage in the proceedings "all ambiguities in the pleadings and affidavits must be construed in the light most favorable to plaintiff," *Teleco Oilfields Services v. Skandia Insur. Co.,* 656 F.Supp. at 756, we find nothing in defendants' memoranda or affidavits effectively (as a legal *or* factual matter) to contravert plaintiff's assertion of jurisdictionally significant facts.

We conclude, therefore, that the Complaint and Plaintiff's Affirmation and Memorandum in Opposition assert a prima facie case of tortious conduct *in* Connecticut sufficient to establish personal jurisdiction under Connecticut's long-arm statute, §§ 33–411(c)(4) and 52–59b(a)(2).[6] We proceed to

(Sup.Ct.1972) (holding that a letter, written in and mailed from New Jersey, which fraudulently induced plaintiff who received it in New York to part with his stock certificate in New York was sufficient to satisfy the requirement of tortious conduct within the state for statutory purposes), they appear to represent a minority position on the interpretation of the New York statute which has not been followed by the federal courts sitting in New York. *See, e.g., Paul v. Premier Elec. Const. Co.,* 576 F.Supp. 384, 389 (S.D.N.Y.1983) (citing *Lynn v. Cohen,* 359 F.Supp. 565, 568 (S.D.N.Y.1973)) and the state case approving of its interpretation, *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8 (1968).

5. Defendants have been particularly unhelpful by discussing seriously almost every section of these two statutes but those which are applicable to tort actions. Among the factual assertions which are meant to defeat jurisdiction is the one which gave rise to the motion for sanctions filed by plaintiff—that the contract in question was signed in Florida. This assertion, whether true or not, is obviously not relevant to a cause of action sounding in tort. For the rest, defendants' arguments and affidavits as

to the corporate defendants are addressed largely to § 33–411(b) (foreign corporations transacting business in the state), and to § 33–411(c)(2) (foreign corporations which solicit business in state). It is not claimed, however, that the corporate defendants are authorized to do business in this state, or that they "transact business" in the state within the meaning of Conn.Gen.Stat. § 33–411(b). The arguments and affidavits as to the individual defendants are not appreciably more responsive to the nature of the claim.

6. As we read the decision of the Connecticut Supreme Court in *Lombard Brothers, Inc. v. General Asset Management Co.,* 190 Conn. 245, 460 A.2d 481 (1983), it compels no other conclusion. In that case, the Court stated of § 33–411(c) generally: "... consistent with the constitutional demands of due process, it is the totality of defendant's conduct and connection with this state that must be considered, on a case by case basis." *Id.* at 255, 460 A.2d 481. We understand this language not to *add* to the statute a contacts requirement different from the constitutional requirement, but rather to read the constitutional standard *into* the statute. We are confirmed in this reading by the discussion of *Lombard* in *Frazer v. McGowan,* 198

consider whether exercise of such jurisdiction would offend due process standards.

### b. Due Process

■ No contacts by defendants with Connecticut are alleged, other than those which give rise to the cause of action. "When, [as here,] the controversy is specifically related to a defendant's contacts with a forum, there is sufficient due process contact if 'the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.' " *Henry Heide, Inc. v. WRH Products Co., Inc.*, 766 F.2d 105, 108 (3d Cir.1985) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In the context of statutes conferring jurisdiction over non-resident motorists, single tortious acts committed in a forum state by persons having no other contacts with that state have long been held sufficient to warrant personal jurisdiction under the Due Process Clause. *See Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927).

In broad language, the Court of Appeals for the Second Circuit has stated that there is "no constitutional problem" to bringing a nonresident defendant into Connecticut to answer for a tort "alleged to have been committed in Connecticut upon a Connecticut resident even if that had been a wholly isolated event." *Buckley v. New York Post Corp.*, 373 F.2d 175, 179 (2d Cir.1967) (Friendly, J.) (no violation of "minimum contacts" requirement of *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny to subject Delaware newspaper publisher, which distributed newspapers in Connecticut via mail subscriptions, bus shipments of consignments to dealers, and wholesale agents, to a libel action by a Connecticut resident in Connecticut district court under § 33–411(c)(4)). No cases decided in this Circuit subsequent to *Buckley* have further illuminated the applicability of that broad assertion to the precise facts of this case. But since that decision cited several Fifth Circuit cases with approval, it is useful to consult further developments in that line of cases in the Fifth Circuit.

Most instructive, perhaps, is *Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir.1982), *cert. denied*, 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983). There a single defamatory telephone call from out of state (analyzed as tortious conduct outside the state causing injury in the state) was held sufficient for due process purposes. The court in *Flowers* emphasized that "the number of contacts with the forum state is not, by itself, determinative ... What is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state." *Id.* at 333 (citations omitted). In deciding whether the defendant did so, the court considered (1) the foreseeability of consequences in the forum state; (2) the interest of the state in providing a forum; (3) the relative conveniences of the parties, and (4) whether the allegedly tortious act was intentional or negligent. *See id.* at 333–34; *see also Vishay Intertechnology, Inc. v. Delta Intern. Corp.*, 696 F.2d at 1068–69 (4th Cir.1982). In the same vein, the court in *Rusack v. Harsha*, 470 F.Supp. 285, 291 (M.D.Pa.1978), applied a test looking to the quality of the contact, whether the cause of action flowed from the contact, whether defendant had purposefully availed himself of the privilege of conducting activities in the forum, and whether the effect in the forum was foreseeable. By this test, the sole contact of mailing copies of a defamatory letter to plaintiff's place of employment in the forum state was held sufficient for due process purposes. Likewise, the court in *Froess v. Bulman*, 610 F.Supp. 332, 336–37 (D.R.I.1984) found a single defamatory letter—the sole contact of the defendant with the forum—sufficient for due process purposes.

In the case before this court, taking plaintiff's factual allegations to be true, as

Conn. 243, 248–249, 502 A.2d 905 (1986) ("In effect we determined ... [in *Lombard* that] in enacting § 33–411(c) ... the legislature intended to exercise its full constitutional power over foreign corporations in cases falling within one of the designated causes of action.").

we must at this stage, defendants purposefully availed themselves of the benefits of this state by fraudulently misrepresenting to a person in this state that they would sell her a condominium on terms more advantageous to her than they ever intended to provide, or did provide, thereby inducing her to enter into a contract to buy and to make a deposit. The commission of the intentional tort of fraudulent misrepresentation has the foreseeable consequence of direct economic injury to plaintiff at her domicile in Connecticut. Connecticut would surely have an interest in providing a forum for her suit. The relative conveniences of Connecticut and Florida as fora in this case reduce essentially to the balance between the interests of the parties themselves in litigating in their respective home states. It would not, in these circumstances, offend the due process clause to subject defendants to suit in this district.

## II. *The Motion for Sanctions*

■ Plaintiff's Motion to Sanction Defendants focuses on the recital, in defendants' Motion to Dismiss and Defendants' First Memorandum in support thereof, of the "fact" that plaintiff had signed the contract in person in Palm Beach County, Florida. Plaintiff regards this as the attorney's compounding of a fraud by defendants and, since the Motion to Dismiss was not supported by affidavits, regards the attorney as having falsely suggested that the assertion was made upon personal knowledge of the facts. *See* Plaintiff's Motion to Sanction Defendants ¶ 5.

In response to the Motion to Sanction, defendants admit that the contract was signed by plaintiff in Connecticut, and mailed to defendants in Florida, where it was executed by their agent. *See* Defendants' Second Memorandum at 3. They characterize their initial claim to the contrary as a mistake on the part of their Connecticut attorney. The explanation of the mistake is that the attorney confused Iris David, plaintiff's mother who made the initial request for a contract form, and who lived in Florida, with plaintiff, to whom the contract was in fact mailed at her residence in Connecticut. *See* Defendants' Second

Memorandum at 6. Defendants argue that the mistake was, in any event, irrelevant to the validity of the Motion to Dismiss, and to the appropriateness of sanctions, because under the actual facts, the place of the execution of the contract remains the same. *See id.*

We approach the Motion to Sanction guided by the standards set forth in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985):

... [A] showing of subjective bad faith is no longer required to trigger the sanctions imposed by the rule. Rather, sanctions shall be imposed against an attorney and/or his client when it appears that a pleading has been been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law, or a good faith argument for the extension, modification or reversal of existing law.

.... Courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer. But where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.

(emphasis in the original) (citations omitted).

Under these standards, plaintiff's Motion to Sanction must be denied. While it is not clear to this court how the fact that the mother requested the contract form from Florida became transformed into the assertion that plaintiff *signed* the contract in Florida, there is nothing here to suggest that the attorney did not make a reasonable inquiry into the facts before confusing them. As to the validity of the pleading as a whole, the worst this court can say about it is that it mischaracterizes—as the Defendants' Second Memorandum to some degree persists in doing—this action as a contract action. But the pleadings do not

altogether ignore the tort theory, and it cannot be said that a challenge to jurisdiction over this tort action in this court had "absolutely no chance of success."

### III.  *Conclusion*

For the reasons set forth above, both defendants' Motion to Dismiss and plaintiff's Motion to Sanction are denied.

It is so ordered