**Albert GORLIN and Selma Gorlin, Plaintiffs,**

v.

**BOND RICHMAN & COMPANY, Abraham Bramnik and John Patten, Defendants.**

**No. 84 Civ. 2598 (JES).**

United States District Court, S.D. New York.

Feb. 7, 1989.

Stanley A. Teitler, P.C., New York City, for plaintiffs; Stanley A. Teitler, Amy Adelson, Richard H. Levenson, of counsel.

Arvey, Hodes, Costello & Burman, Chicago, Ill., Shanley & Fisher, P.C., New York City, for defendants; Robert Bramnik, Matthew Farley, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiffs Albert and Selma Gorlin bring this action pursuant to 15 U.S.C. § 80b–6 (1982) (the Investment Advisers Act of 1940 ("IAA")); 15 U.S.C. § 78j (1982) and 17 C.F.R. § 240.10b–5 (1987) (section 10(b)

of the Securities Exchange Act of 1934 and Rule 10b–5 ("section 10(b)")); and 18 U.S.C. § 1964(c) (1982) (Civil RICO ("RICO")). Plaintiffs also allege state law claims of fraud, negligence, breach of contract and breach of fiduciary duty. Defendants have moved for summary judgment on the ground that plaintiffs' claims are barred by the relevant statutes of limitation. For the reasons set forth below, the Court agrees and defendants' motion is granted.

## FACTS

The following facts, except as noted, are undisputed.

Plaintiffs Albert and Selma Gorlin were, at all times relevant to this action, citizens of the State of Connecticut. *See* Complaint at ¶ 4. Defendant Bond Richman & Company ("Bond Richman") is an investment firm engaged in the trading of securities in New York. *Id.* at ¶¶ 5, 24. Defendant Abraham Bramnick was, at all times relevant to this action, an officer of Bond Richman, and an acquaintance of the plaintiffs. *Id.* at ¶ 6. Defendant John Patten was an employee of Bond Richman from approximately December 1976 to December 1978. *Id.* at ¶ 7.

In November of 1976, plaintiffs, pursuant to a conversation with Mr. Bramnick, arranged to have funds totaling $160,000 transferred from their account with Shearson Hayden Stone in New York City, to defendant Bond Richman Company in New York City. *See id.* at ¶ 10; Deposition of Albert Gorlin, ("Gorlin Dep.") at 14; Plaintiffs' Memorandum of Law ("Pl. Mem.") at 3. Thereafter, during 1977 and 1978, plaintiffs transferred further moneys and other property and opened other accounts with Bond Richman. *Id.* at ¶¶ 11–21. The total of the funds deposited in their accounts eventually reached almost $295,000.

In April of 1977, plaintiffs authorized Bond Richman to utilize the money they had deposited to purchase and sell securities. *Id.* at ¶ 11. Trading in the account caused the Gorlins to lose money during 1977 and 1978. *Id.* at ¶¶ 28–29. By December of 1978, Mr. Gorlin had become

aware of the extent of their losses. *Id.*[1] Mr. Gorlin did not inform his wife of the losses due to the precarious state of her health at that time. *See* discussion *infra* at p. 242. Instead, he left the remaining money in the Bond Richman account in the hope that Mr. Bramnick could make up the losses.[2] Finally, in March of 1984, Mr. Gorlin removed their funds from the account and commenced this lawsuit.

## DISCUSSION

Plaintiffs allege a litany of improper acts by the defendants in managing their accounts.[3] Defendants have moved for summary judgment arguing that plaintiffs' claims are barred by the relevant statutes of limitation.[4]

### I. *Plaintiffs' Federal Claims*

■ Plaintiffs' federal claims are brought under the IAA, section 10(b) and RICO. Neither section 10(b) nor the IAA have their own statutes of limitation. Where a federal statute provides a cause of action but does not provide a period of limitation, a federal court must utilize the most closely corresponding statute of limitation of the forum state, here New York, including any borrowing statute.[5] *See Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir. 1977).

Here the parties sharply dispute whether the New York borrowing statute requires the application of the law of Connecticut or the law of New York. Defendants assert that under the New York borrowing statute, the applicable statute of limitation is the three year statute of Connecticut, the state where the Gorlins reside. Plaintiffs argue that the borrowing statute does not apply, and that the correct statute of limitation is the more generous six year period under New York law.

■ The New York borrowing statute, New York CPLR § 202 (McKinney 1972),[6] applies where a cause of action accrues without the state in favor of an out of state resident. Where the borrowing statute does apply, the Court must use the shorter of either the New York statute of limitation, or the statute of limitation of the state where the cause of action accrued. Thus,

---

1. Exactly when Mr. Gorlin became aware of the losses is in dispute. On numerous occasions during 1977–78 Mr. Gorlin communicated with the defendants by telephone to discuss perceived problems with the account. It is undisputed, however, that at the latest Mr. Gorlin became aware of the losses in December of 1978.

2. Mr. Gorlin alleges that defendants in 1977–78 represented that the losses could be made up.

3. For example, plaintiffs allege that defendants churned the accounts, ignored specific instructions regarding how the accounts were to be managed, misrepresented the state of plaintiffs' accounts and fraudulently represented that they could make up any losses suffered. Whether defendants actually engaged in any of the alleged actions is not before the Court on this motion.

4. Defendants also argue that plaintiffs have no private right of action for damages under the IAA. However, the Court need not resolve that issue because in any event plaintiffs clearly have a private right of action under the IAA to seek recission of their investment contract and restitution of any consideration paid thereunder. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 14 & n. 4, 100 S.Ct. 242, 244 & n. 4, 62 L.Ed.2d 146 (1979).

5. Plaintiffs' RICO claims are, however, covered by a federal statute of limitation. In *Agency Holding Corp. v. Malley–Duff Assoc., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987), the Court held that Civil RICO claims carry a four year statute of limitation. Because plaintiffs admit that they learned of their losses in 1978 and had suffered their injuries by that date, but did not commence this action until March of 1984, their RICO claims are clearly barred.

The Second Circuit's recent decision in *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988), does not change this result. Although that case held that the four year statute of limitations runs from each separate injury, plaintiff here has not alleged any injury occurring after 1978.

6. Section 202 states that:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

the threshold issue in this case is whether the cause of action accrued in New York or Connecticut. *See Sack v. Low*, 478 F.2d 360, 368 (2d Cir.1973).

■ For purposes of the New York borrowing statute, a cause of action accrues where the injury is sustained. *See Armstrong v. McAlpin*, 699 F.2d 79, 89 (2d Cir.1983). In cases involving economic harm, that place is normally the state of plaintiff's residence. *See id.; Industrial Consultants, Inc. v. H.S. Equities, Inc.*, 646 F.2d 746, 747 (2d Cir.), *cert. denied* 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Arneil, supra*, 550 F.2d at 779.

■ In the instant case, plaintiffs are residents of Connecticut. They argue, however, that because their account was maintained and traded on in New York, and because the alleged fraud was committed in New York, that the site of the transaction and the weight of the contacts in this case support their view that the cause of action accrued in New York.

Plaintiffs' reliance on the grouping of contacts approach is, however, misplaced. The Second Circuit has not relied on the grouping of contacts approach to determine where a cause of action accrues for purposes of the borrowing statute, although it has been used in other contexts. *See Armstrong, supra*, 699 F.2d at 89; *Arneil, supra*, 550 F.2d at 779; *Sack, supra*, 478 F.2d at 367. Absent unusual circumstances, the economic impact, and thus the injury in an action such as this one, occurs where the plaintiff resides.[7] *See e.g., Appel v. Kidder, Peabody & Co.*, 628 F.Supp. 153 (S.D.N.Y.1986); *Klock v. Lehman Bros. Kuhn Loeb, Inc.*, 584 F.Supp. 210 (S.D.N.Y.1984); *Maiden v. Biehl*, 582 F.Supp. 1209 (S.D.N.Y.1984). Thus, plaintiff's cause of action accrued in Connecticut.[8]

### A. Plaintiffs' Stafford Argument

■ Plaintiffs argue alternatively that because they could not have sued defendants in Connecticut the New York borrowing statute should not be applied at all. *See Stafford v. International Harvester Co.*, 668 F.2d 142, 151 (2d Cir.1981). While *Stafford* does hold that lack of personal jurisdiction over defendants in a plaintiff's state of residence precludes application of the borrowing statute, in this case plaintiffs could have obtained personal jurisdiction over the defendants in Connecticut.

Both the Connecticut long arm statute, and the federal securities laws would have allowed plaintiffs to obtain jurisdiction over the defendants within the Connecticut period of limitation. The Connecticut long arm statute, Conn.Gen.Stat.Ann. § 33–411(c) (West Supp.1988), grants jurisdiction over any person committing a tort within the state. Connecticut courts have upheld personal jurisdiction on facts similar to those in the instant case. *See Teleco Oilfield Services, Inc. v. Skandia Insurance Co.*, 656 F.Supp. 753 (D.Conn.1987); *McFaddin v. National Executive Search, Inc.*, 354 F.Supp. 1166 (D.Conn.1973) (misrepresentations entering state by telephone constitute tort within state). In addition, defendants would have been subject to nationwide service of process under the federal securities laws on plaintiffs' section 10(b) claims. *See Mariash v. Morrill*, 496 F.2d 1138, 1142 (2d Cir.1974); *First Federal Savings & Loan Ass'n. of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 634 F.Supp. 1341, 1347 (S.D.N.Y.1986); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rajcher*, 609 F.Supp. 291, 293 (S.D.N.Y.1985). In sum, plaintiffs' *Stafford* argument is without foundation and the New York borrowing statute does apply to this case.

---

**7.** Even if the facts of the case indicated that the cause of action arose in both New York and Connecticut, the New York borrowing statute would require application of Connecticut law. *See Sack, supra*, 478 F.2d at 368.

**8.** Plaintiff has pointed to no unusual circumstances which require a deviation from the settled rule in this case. Such cases are extremely rare. *See e.g., Lang v. Paine, Webber, Jackson &*

*Curtis, Inc.*, 582 F.Supp. 1421 (S.D.N.Y.1984). In that case, a Canadian plaintiff had for many years, kept a Boston account in American dollars as a hedge against currency fluctuations. The Court held that given the length of time the account was in Boston, and the purpose of the account, the economic loss was suffered in Boston rather than Canada.

## B. Plaintiffs' Renvoi Argument

■ Plaintiffs argue, however, that even if the borrowing statute applies and the cause of action accrued in Connecticut, the New York limitations period should apply to their claims. Plaintiffs contend that a reading of *Knieriemen v. Bache, Halsey, Stuart, Shields Inc.*, 74 A.D.2d 290, 427 N.Y.S.2d 10 (1st Dept.1980), in combination with Connecticut cases holding that statutes of limitation are procedural rather than substantive law, requires this Court to apply New York's statutes of limitation because Connecticut would apply them. This argument is unpersuasive for the following reasons.

Plaintiffs reliance on New York cases which hold that when another state's statute of limitation is borrowed by the New York Courts it is taken along with all its relevant interpretative baggage is misplaced. *See e.g., Antone v. General Motors Corp.*, 64 N.Y.2d 20, 473 N.E.2d 742, 484 N.Y.S.2d 514 (1984) (borrowing state tolling provisions). Pursuant to this doctrine, in *Knieriemen* the Appellate Division, in borrowing Louisiana's statute of limitations to apply to a Louisiana plaintiff's fraud claims, thought it should also borrow what it perceived to be Louisiana law which indicated that Louisiana would look back to New York's statute of limitations. *Knieriemen, supra*, 74 A.D.2d at 296, 427 N.Y.S.2d at 15. As a result, the *Knieriemen* court applied the New York statute of limitations to claims accruing in Louisiana.

However, even assuming arguendo that the court in *Knieriemen* was correct in its reading of Louisiana law, that case is irrelevant here because plaintiff has not demonstrated that Connecticut law requires this Court to look back to the law of New York. Indeed, plaintiff has cited no cases holding that Connecticut law directs the application of the forum state's law in response to a borrowing statute. Instead, plaintiffs rely only on Connecticut cases generally holding that statutes of limitation are procedural rather than substantive, a characteristic common to the law of many states and not specifically relevant to the application of the New York borrowing statute. Were the law as plaintiff suggests, the New York borrowing statute would become a useless appendage to the CPLR. Since the law of almost every state contains similar references to statutes of limitation as procedural law, virtually every use of the borrowing statute would result in a return to the New York statute of limitation. This would clearly defeat the purpose of the borrowing statute.[9] Moreover, courts sitting in New York have never construed Connecticut law as plaintiff suggests. *See e.g., Appel, supra*, 628 F.Supp. at 156; *Klock, supra*, 584 F.Supp. at 215; *Maiden, supra*, 582 F.Supp. at 1212.

In sum, the Court finds that the New York borrowing statute applies to this case and that under that statute plaintiffs' causes of action accrued in Connecticut. Thus, Connecticut's three year statute of limitation for fraud applies to plaintiffs' claims under section 10(b)[10] and the IAA.

## C. Equitable Lulling

Plaintiffs argue further that even if Connecticut's statutes of limitation apply to their claims, those statutes should be tolled based on defendants' conduct occurring after 1978 which allegedly lulled plaintiffs into not filing suit immediately. In effect, plaintiffs contend that Mr. Bramnick, by making representations that he could make up the losses suffered by plaintiffs, caused them to forbear from bringing suit.

■ Federal law determines when a state statute of limitation starts to run with respect to an action alleging fraudulent violation of the securities laws. *See*

---

**9.** The purpose of the New York borrowing statute is to protect New York defendants from suits in New York that would be barred by the shorter statute of limitation in other states where the non resident plaintiffs could have brought suit. *See Arneil, supra,* 550 F.2d at 779.

**10.** The Court notes that although defendants have not argued the point, it is quite probable that Connecticut's two year Blue Sky statute of limitation applies to plaintiffs' fraud claims. *See* Conn.Gen.Stat.Ann. § 36–498(f) (West Supp. 1988); *Appel, supra* 628 F.Supp. at 156. Under either statute, plaintiffs' fraud claims are barred.

*Armstrong, supra,* 699 F.2d at 87; *Robertson v. Seidman & Seidman,* 609 F.2d 583, 587 (2d Cir.1979). Under federal law, equitable lulling, or fraudulent concealment which tolls the statute of limitation occurs only when the defendants' conduct or representations are specifically directed to preventing the plaintiff from instituting legal action. *See Hamilton v. Smith,* 773 F.2d 461, 468 (2d Cir.1985); *Long v. Abbott Mortgage Corp.,* 459 F.Supp. 108, 112–113 (D.Conn.1978). Moreover, such fraud is not to be presumed. It must be strictly proven, and the evidence must be precise and unequivocal. *Id.*

■ This Court held a hearing and took testimony on the issue of whether plaintiffs had been fraudulently induced to forbear from bringing suit. At that hearing this Court found that plaintiff had not come forward with any evidence of lulling. Rather, plaintiff Albert Gorlin, testified that he wanted to leave the account in defendants' hands out of a desire to avoid informing his wife of their losses. While this may have been the proper decision from Mr. Gorlin's personal point of view, it does not support the claim that he continued to utilize defendants' services because of defendants' misrepresentations and that he did not sue because of them. Moreover, plaintiffs offered no evidence that defendants ever used language directed at preventing a lawsuit. As the hearing testimony indicates, this subject never even arose in discussions between the parties. Therefore, defendant could not and did not induce plaintiffs to forbear from taking legal action. It follows that plaintiffs' federal causes of action arose, at the latest, when plaintiffs became aware of their losses. This occured by, at the latest, December of 1978. Since suit was not commenced until March of 1984, under Connecticut's three year statute of limitation their federal claims must be dismissed.[11]

## II. *Plaintiffs' State Law Claims*

■ In addition to their federal claims plaintiffs have alleged that defendants committed common law fraud, breach of fiduciary duty, negligence and breach of contract. With respect to all of plaintiffs' state law tort claims the New York borrowing statute, as discussed above, requires the application of Connecticut's three year statute of limitations. Thus, these claims must also be dismissed as untimely brought.[12]

■ The only claim remaining is plaintiffs' contract claim. As to this claim, plaintiffs contend that even under Connecticut law their claim is not time barred because defendants breached an oral contract separate from the written agreements governing the account with respect to the manner in which plaintiffs' funds were to be managed. Even assuming that this claim is not barred by the parole evidence rule, an issue not free from doubt, the Court finds that the contract claim is also barred by the applicable statute of limitation.

There are two Connecticut statutes of limitation governing oral contracts. One, Conn.Gen.Stat.Ann. § 52–576 (West Supp. 1988), allows a period of six years, and applies to executed or simple parol contracts, *i.e.,* those contracts where, at the time of the breach, one party has completely performed, and all that remains is for that party to be paid. *See Tierney v. American Urban Corp.,* 170 Conn. 243, 365 A.2d 1153 (1976). The second, Conn. Gen.Stat.Ann. § 52–581 (West Supp.1988), allows a period of three years, and applies to executory contracts. An executory con-

---

**11.** Plaintiffs argue that because Mr. Gorlin did not tell Mrs. Gorlin of the losses until 1982, and because she did not read the account statements sent to her, the statute should not begin to run against her until 1982. However, this alleged ignorance is not even arguably related to any conduct of the defendants and thus can afford no basis for tolling the statute of limitations. Moreover, a plaintiff must use reasonable diligence to discover an injury. A failure as funda-

mental as neglecting to read the financial statements sent by Bond Richman falls well below reasonable diligence.

**12.** Connecticut's law of equitable tolling is identical to the federal standard. *See Long, supra,* 459 F.Supp. at 113. Accordingly, plaintiffs' lulling argument also fails with respect to their state law claims.

tract is one where some performance remains to be rendered by each party and neither party has, at the time of the breach performed completely. The issue presented then is whether this contract was executed or executory.

The contract at issue here was clearly not a simple parol contract, but one that governed a more complex ongoing relationship. Thus, the instant case is markedly different from those Connecticut cases applying the six year period where a simple service was completely performed at the time of the breach. Here, at the time of the alleged breach neither party had fully performed its obligations under the contract. Plaintiff was still obligated to pay commissions and defendant was obligated to manage the accounts. The contract was, therefore, executory, and section 52–581, the three year period, applies to plaintiffs' contract claims. The cause of action for breach of contract accrued, at the latest, in December of 1978, when defendants allegedly breached the oral agreement. *See Beckenstein v. Potter and Carrier, Inc.,* 191 Conn. 150, 464 A.2d 18, 22 (1983). Since plaintiffs did not bring suit on the contract until March of 1984, their cause of action for breach of contract is therefore barred.

### CONCLUSION

For the reasons set forth above, plaintiffs' claims are barred by the relevant statutes of limitation. Accordingly, defendants' motion to dismiss the complaint is granted. The clerk is directed to dismiss the complaint, enter judgment for the defendants and close the above-captioned action.

It is SO ORDERED.