# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 21, 2020

Lyle W. Cayce
Clerk

No. 18-31060

MARIA STEFFAN FRANK, Individually and as Administrator of the Estate of Betty Steffan; DAVID BRUCE STEFFAN; THOMAS J. STEFFAN; CYNTHIA D. GUM; ROBERT M. STEFFAN; DAVID B. STEFFAN, JR.; RICHARD L. STEFFAN; SUZANNE L. KELLEY,

> Plaintiffs - Appellants

v.

P N K (LAKE CHARLES) L.L.C., erroneously named as Pinnacle Entertainment Incorporated, doing business as L'Auberge du Lac Hotel; Casino,

> Defendant - Appellee

Appeal from the United States District Court
Western District of Louisiana

Before BARKSDALE, STEWART, and COSTA, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Plaintiffs-Appellants, Maria Steffan Frank, individually and as Administrator of the Estate of Betty Steffan, David Bruce Steffan, Thomas J. Steffan, Cynthia D. Gum, Robert M. Steffan, David B. Steffan, Jr., Richard L. Steffan, and Suzanne L. Kelley (collectively referred to as "Appellants") initiated this wrongful death action against Defendant-Appellee PNK (Lake Charles) LLC ("PNK") alleging, *inter alia*, claims for negligence, premises liability, and breach of warranty. Appellants originally filed a state action in

No. 18-31060

Harris County, Texas. The case was subsequently removed and transferred to the presiding court for lack of personal jurisdiction. Shortly after the case's transfer, the district court dismissed Appellants' claims for being time-barred. Appellants appeal the judgment and the related order transferring this action to the Western District of Louisiana. In view of Supreme Court precedent illuminating the personal jurisdiction standard, we AFFIRM.

I.

In 2015, Betty Steffan fell off a swivel chair in the L'Auberge du Lac Hotel & Casino in Lake Charles, Louisiana ("L'Auberge"). When the 86-year-old Texas native fell from the stool, her head struck the casino's floor causing a subdural hematoma which led to her death the following day.

The PNK's Texas contacts below are outlined in Appellants' complaint and exhibits attached to Appellants' response to PNK's motion to dismiss or transfer.[1]

---

[1] According to the complaint, Appellants allege that personal jurisdiction exists because PNK "employed Texas residents, solicited business within the State of Texas, and has otherwise availed itself of the benefits and protections offered by the laws of" Texas.

For jurisdictional support in response to PNK's motion to dismiss or transfer, the record reflects that Appellants relied on the following: (1) an affidavit from Maria Steffan Frank; (2) a 2005 Houston Chronicle Article discussing the marketing strategies in opening L'Auberge; (3) an affidavit from Appellants' counsel; (4) economic data related to Louisiana's gaming board and the economic impact of riverboat casinos; (5) a bus schedule published by Pinnacle Entertainment, Inc. ("Pinnacle"), PNK's sole owner; (6) a Pinnacle organizational chart; and (7) a Pinnacle press release.

Outside of the fact that the majority of this evidence provides little to no jurisdictional support, we still consider "the contents of the record at the time of the motion." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (quoting *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002); *Washington v. Norton Mfg. Inc.*, 588 F.2d 441, 443 (5th Cir. 1979) (stating that the court has "broad discretion to allow discovery on jurisdictional issues") (citation omitted).

No. 18-31060

While PNK's and L'Auberge's business operations are domiciled in Louisiana[2], L'Auberge draws a large portion of its revenue from Texas patrons. Located 135 miles from Texas's largest city, Houston, L'Auberge has long been an attractive venue to Texans since the multimillion-dollar complex was built in 2005.

PNK's marketing plan also evinces its intention to promote L'Auberge to Texas residents. PNK sent marketing teams to Texas and conducted focus groups to learn what would attract Texan customers. It advertises in the Houston area, via mailers, the internet, billboards, television commercials, and radio ads. It also subsidizes charter bus services to shuttle Texas patrons across state lines. The bus schedule is advertised on the L'Auberge website. In her affidavit, Maria Steffan Frank stated that she (along with other members of the estate) had received mail advertisements and seen billboards while living in Texas. Despite its various Texas solicitations vis-à-vis L'Auberge, PNK's Texas contacts solely stem from these marketing activities, with the exception of the charter services.

PNK is not registered to do business in Texas. It does not own or have any offices, personal property, real property (including rental property), bank accounts, employees[3], or agents for service of process in Texas.

II.

Claiming that L'Auberge provided unsafe facilities and failed to provide Betty Steffan with proper aid following her fall, Appellants initially filed the wrongful death complaint in a Texas state court in Harris County.[4] PNK

---

[2] PNK is a limited liability company that owns the gaming license for L'Auberge. It is domiciled in Baton Rouge, Louisiana.

[3] Of note, while PNK does not have employees in Texas, it does retain Texas charter bus services for shuttling Texans to L'Auberge.

[4] At the outset, Pinnacle was the named defendant in this wrongful death action. PNK later intervened as the appropriate party.

No. 18-31060

removed the matter to the Southern District of Texas (Houston Division) and filed a concurrent motion to transfer or dismiss for lack of personal jurisdiction. In a one-page order, the district court granted PNK's motion to transfer because PNK's advertising (1) was promoted nationally and did not "establish systematic and continuous contacts with Texas that confer general jurisdiction"; and (2) did not relate to Appellants' injuries to confer specific jurisdiction. The court transferred the case to the Western District of Louisiana.

Before the presiding district court, PNK moved for summary judgment due to Appellants' claims being time-barred by Louisiana's 1-year prescription under Civil Code article 3492. Appellants did not dispute this assertion. Consequently, PNK's motion was granted because this action was filed outside of the prescription period.[5]

Appellants appeal, seeking to undo the Louisiana final judgment by reversing the Southern District of Texas transfer order. The parties assume the venue affects the case's outcome as Texas provides for a 2-year limitations period for personal injury actions.[6]  *See* TEX. STAT. § 16.003. Appellants' position is that the Texas court erred in not exercising personal jurisdiction over PNK because a non-resident company, like PNK, may be subjected to general jurisdiction for its targeted advertising in the forum state.

III.

"We review de novo a dismissal for lack of personal jurisdiction." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000) (citation omitted).

---

[5] Betty Steffan was fatally injured in 2015, and this action commenced in 2017.

[6] "[F]ollowing a section 1406(a) transfer, regardless of which party requested the transfer or the purpose behind the transfer, the transferee court must apply the choice of law rules of the state in which it sits." *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1110 (5th Cir. Unit A June 1981).

4

"There is personal jurisdiction if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). "The Texas long-arm statute's broad doing business language authorizes personal jurisdiction over a nonresident defendant as far as the federal constitutional requirements of due process will allow." *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010) (internal quotations and citations omitted).

The plaintiff "bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) (citation omitted). To determine whether the plaintiff has met this burden, the court can consider the "assertions in the plaintiff's complaint," as well as "'the contents of the record at the time of the motion . . . .'" *Sangha*, 882 F.3d at 101 (5th Cir. 2018) (quoting *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)).

A.

General Jurisdiction and the Present Framework for

Being "Essentially At Home"

"'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction."[7] *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir.

---

[7] The Due Process Clause of the 14th Amendment guarantees that no federal court may exercise personal jurisdiction over a non-resident defendant unless the defendant has sufficient minimum "contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). This provides "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will

No. 18-31060

2000) (citation omitted). General jurisdiction[8] exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted).

There are very few cases where the Supreme Court addresses the scope of general jurisdiction related to corporations. *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437 (1952) "remains the 'textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum.'" *Goodyear*, 564 U.S. at 928 (quoting *Donahue v. Far E. Air Transp. Corp.*, 652 F.2d 1032, 1037 (D.C. Cir. 1981)). This is the only Supreme Court case where general jurisdiction was appropriately exercised against a corporation, and since *Perkins*, it has become "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citations omitted).

The Supreme Court (twice) discussed general jurisdiction and stated that, in order to properly exercise general jurisdiction, a defendant-company must be "at home" in the forum state. *Goodyear*, 564 U.S. at 919; *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).[9] In reversing the state appellate court's decision to exercise personal jurisdiction, the Supreme Court stated that "[f]or

---

and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted).

[8] At the September 6, 2019, oral argument, Appellants' counsel maintained that their position only supports general jurisdiction and does not assert any specific jurisdiction arguments. Specific jurisdiction is therefore not discussed below.

[9] The high court also discussed general jurisdiction in *BNSF Ry. Co. v. Tyrrell*, — – U.S. ——, 137 S. Ct. 1549, 1558-62 (2017). The Supreme Court recognized *Goodyear* and *Daimler* as the framework for the "at home" analysis; in turn, we use those two cases as our guideposts.

an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924 (citing Brilmayer et al., *A General Look at General Jurisdiction*, 66 TEXAS L. REV. 721, 728 (1988)).  In turn, generally, a corporation's "home" falls in two paradigmatic places: (1) the state of incorporation and (2) the state where it has its principal place of business.  *BNSF Ry. Co. v. Tyrrell*, —— U.S. ——, 137 S. Ct. 1549, 1558 (2017) ("The paradigm forums in which a corporate defendant is at home . . . are the corporation's place of incorporation and its principal place of business.") (internal quotations and citations omitted).  These two places "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler*, 571 U.S. at 137.

In *Daimler*, general jurisdiction was predicated on the California contacts of Daimler's subsidiary, MBUSA.  *Id.* at 124.  The Supreme Court held that MBUSA's California activities could not subject Daimler to general jurisdiction in California because the contacts were insufficient "'to render [it] essentially at home'" in California.  *Id.* at 122 (quoting *Goodyear*, 564 U.S. at 919) (alteration in original).  Even though a corporation might operate "in many places," it cannot "be deemed at home in all of them" because unpredictability would follow and jurisdictional rules are meant to "promote greater predictability."  *Id.* at 137, 139 n.20.  A company is therefore deemed "at home" when "'the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities'"—which more than likely is the business's domicile.  *Id.* at 127 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945)).  Accordingly, "the [general jurisdiction] inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and

No. 18-31060

systematic, it is whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Id.* at 138–39 (internal quotations omitted) (quoting *Goodyear*, 564 U.S. at 919) (alteration in original).

## B.

### General Jurisdiction Cannot Be Conferred

PNK is a limited liability company[10] domiciled in Louisiana. In turn, for general jurisdiction to exist in a forum other than Louisiana, this would have to be the "exceptional case" where PNK's corporate operations are "so substantial and of such a nature as to render the corporation at home" in that forum. *Id.* at 139 n.19 (citing *Perkins*, 342 U.S. at 437). PNK's corporate contacts with Texas are not of the exceptional nature such that PNK could be found to be "at-home" in Texas.

Appellants' position is that PNK's contacts are sufficient to permit the exercise of general jurisdiction because PNK's targeted advertising activities are aimed at Texans. For support, Appellants submitted evidence indicating that (1) a substantial number of L'Auberge's patrons are out-of-state; (2)

---

[10] Of note, neither the Supreme Court nor a sister circuit has directly addressed whether the type of artificial entity, *e.g.*, partnership or limited liability company, affects the "at home" analysis. Our circuit and several in-circuit district courts have applied the "at home" test to entities other than corporations, albeit without analyzing whether the entity type changes the outcome. *See*, *e.g.*, *Cunningham v. CBC Conglomerate, LLC*, 359 F.Supp.3d 471, 478–79 (E.D. Tex. 2019) (finding that a limited liability corporation was not considered "at home" based on insufficient contacts); *Stewart v. Marathon Petroleum Co. LP*, 326 F.Supp.3d 284, 292–95 (E.D. La. 2018) (same in the context of a limited partnership); *Head v. Las Vegas Sands, LLC*, 298 F.Supp.3d 963, 976–80 (S.D. Tex. 2018), *aff'd* 760 F. App'x 281 (5th Cir. 2019) (same).

Here, we are examining the corporate structure of a limited liability company whose physical corporate operations are domiciled in Louisiana. The rationale behind this test is to rely on a business's domicile or place of principal business as a guidepost in ascertaining where the business is "at home." Considering this premise, the entity type is not germane to this jurisdictional analysis; instead it is the company's domicile that merits attention.

L'Auberge was designed for the Houston market; (3) PNK's marketing research, which included focus groups, was focused on Houston; and (4) PNK pays for Texas bus companies to take Texans to L'Auberge. Taken together, Appellants contend that PNK's targeted solicitation is consistent, extensive, and what drew Betty Steffan and Maria Steffan Frank to L'Auberge on the night of the incident. Tellingly absent from Appellants' briefs is any mention of the "at home" test and its application here.[11]

The issues here call for us to conduct an "at home" jurisdiction analysis in connection with advertising contacts targeting a forum state. In the context of personal jurisdiction, we have yet to address this type of marketing that targets out-of-state patrons. The closest factual scenario came when addressing national advertisements in a forum state—which we concluded did not confer general jurisdiction. *See Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) ("Advertising and marketing through national media [are] insufficient [to confer general jurisdiction], as are isolated visits to a forum."); *Null v. Bank One of Columbus, N.A.*, No. 92–5662, 1993 WL 82034,

---

[11] At oral argument and in briefs, the parties spent considerable time quibbling over whether Pinnacle or PNK is responsible for the advertising at hand. According to PNK, Appellants erroneously impute Pinnacle's marketing activities to PNK. Appellants' position is that if Pinnacle is acting on PNK's behalf in promoting L'Auberge, then such jurisdictional contacts can be attributable to PNK, especially considering that PNK voluntarily intervened, in Pinnacle's place, as the appropriate party.

This court generally does not impute contacts across parents and subsidiaries for jurisdictional purposes. *See Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773–74 (5th Cir. 1988) (holding that when "a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent").

We agree that a portion of these advertising activities can be attributable to an entity other than PNK (*e.g.*, the bus schedule stating that "L'Auberge is a registered trademark of Pinnacle"). However, because these contacts in totality fail to meet the standard for minimum contacts, evaluating each contact to determine its origin makes no difference. In other words, with or without Pinnacle's apparent advertising activities as jurisdictional support, PNK finds itself in the same position—lacking general jurisdiction.

at *1 (5th Cir. Mar. 11, 1993) ("Defendants' advertising in a publication with national circulation does not support a finding of general jurisdiction.") (footnote omitted).    While our previous case law brings us to a familiar destination point—finding no general jurisdiction—we must chart a different trail with the "at home" test.

Here, the inquiry is whether PNK's targeted advertising renders it "at home" in Texas.  The answer is no.  Evaluating these factual allegations and evidence in the light most favorable to Appellants, PNK's contacts are comprised of advertising activities (*e.g.*, internet aids, mailers, market research, billboards, TV commercials) and a shuttle service subsidy purely aimed at Texans.  With the exception of PNK's subsidized shuttle service, we understand that PNK's ongoing promotional campaign is intentionally directed at Texas to solicit patrons.  True, these activities are among the indicia of "continuous and systematic" contacts.  *Cf. Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 349 (5th Cir. 1984) ("The targeted solicitation [which include activities that extend beyond that of the case at bar] together with the substantial number of Louisiana patrons support Louisiana's legitimate interest in providing its citizens with reasonable access for redress."); *accord Gavigan v. Walt Disney World, Inc.*, 646 F.Supp. 786, 787–89 (E.D. Pa. 1986) (finding that prolonged, targeted advertising campaign and presence in forum state justified general jurisdiction).  Continuous and systematic contacts nonetheless must be "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities."  *Int'l Shoe*, 326 U.S. at 318 (describing what is now known as general jurisdiction).  And to comport with *Daimler*, the affiliations with the forum state must approximate physical presence.  *Turney v. Hyundai Constr. Equipment USA Inc.*, 577 F. App'x 659, 660 (9th Cir. 2014) (citing *Daimler*, 571

U.S. at 136–39 and *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000)).  This is where Appellants fall short.

Under the alleged facts and evidence (or lack thereof), Appellants fail to demonstrate PNK's physical presence in Texas.  There is no evidence pointing to PNK's physical operations being located in Texas.  Indeed, it is uncontroverted that PNK does not have employees or registered agents stationed in Texas; a Texas license or permit; offices, gaming facilities or real estate in Texas; nor does it have a bank account or pay taxes in Texas.  *Cf. In re Knight Corp.*, 378 S.W.3d 658, 660 (Tex. App.—Houston [14th Dist.] 2012) (holding that sales and purchases in Texas, as well as in-state facilities and bank accounts, are relevant to determining whether general jurisdiction exists).  PNK's Texas contacts begin and end with its marketing activities.  And its physical corporate operations are performed entirely in Louisiana, its domicile.  PNK is not carrying on any "part of its general business" in Texas. *Perkins*, 342 U.S. at 438 (upholding general jurisdiction because, *inter alia*, "[t]he corporation has been carrying on in Ohio a continuous and systematic, but limited, part of its general business."); *Tyrrell*, 137 S. Ct. at 1558–59 (looking to whether the amount of business in the forum is a significant proportion of defendant's business).  The most that can be said of PNK is that it does a substantial amount of business *with* Texans but not *in* Texas.  *See Monkton*, 768 F.3d at 432 ("In this case, at most, [the defendant's] website shows that [it] conducts business with Texas, not in Texas.").  PNK's advertising efforts alone hardly allow us to infer that PNK was literally present in Texas.

No. 18-31060

## C.

### Reconciling Targeted Advertising Caselaw
### Preceding *Goodyear* and *Daimler*

Appellants identify a handful of pre-*Goodyear* and *Daimler* district court cases finding general jurisdiction against non-resident casinos for their localized marketing efforts. *See, e.g.*, *Wilson v. Ameristar Casino Vicksburg, Inc.*, No. 07-0297, 2007 WL 2284608, at *2–4 (W.D. La. July 10, 2007); *Grabert v. New Palace Casino, L.L.C.*, No. 03-382, 2003 WL 21999351, at *4 (E.D. La. Aug. 20, 2003); *Gorman v. Grand Casino of La., Inc.-Coushatta*, 1 F.Supp.2d 656, 658 (E.D. Tex. 1998). According to Appellants, the Texas district court ignored the cited cases—which contain jurisdictional issues that overlap with this matter. Because other district courts gave substantial weight to these casinos' out-of-state advertising contacts, Appellants urge us to do the same in considering this inquiry.

The cited support is wide of the mark. As a preliminary point, Appellants' cases predate the "at home" test. Notwithstanding the dated caselaw, each case exercises general jurisdiction over a non-resident casino because it "had numerous local advertising contacts with the [forum state]," including "the local Yellow Pages, . . . local billboards, local telephone directories, local television, and local radio." *Gorman*, 1 F.Supp.2d at 659; *Wilson*, 2007 WL 2284608, at *2–3 (finding general jurisdiction solely based on "actively soliciting patrons from Louisiana" with "regular radio, television, newspaper, and billboard advertising") (citations omitted); *Grabert*, 2003 WL 21999351, at *3 ("Local advertising, however, when successful and directed toward local markets can support personal jurisdiction and can constitute systematic and continuous contacts supporting general jurisdiction."). These

are not the only cases that follow this analysis in exercising general jurisdiction over out-of-state casinos wholly predicated on local advertising.[12]

We take this opportunity to properly apply the redefined general jurisdiction test under *Daimler*. Indeed, our sister circuits have already applied the "at home" test under similar targeted marketing or solicitation facts and found no general jurisdiction. *Kipp v. Ski Enter. Corp. of Wisc.*, 783 F.3d 695, 699 (7th Cir. 2015) (finding no general jurisdiction and stating that while the defendant solicited many Illinois residents, "no case has ever held that solicitation alone is sufficient for general jurisdiction" and such contacts "still do[] not suffice to make [the defendant] at home in Illinois."); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1069–70 (9th Cir. 2014) (finding defendant's contacts, which included advertising in publications disseminated in forum state, to be insufficient to subject it to general jurisdiction because the "Supreme Court's recent decision in *Daimler* makes clear the demanding nature of the standard for general personal jurisdiction over a corporation."); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1074–76 (9th Cir. 2011) (stating that a non-resident corporation was not subject to general personal jurisdiction in California, despite the corporation "misappropriat[ing] [plaintiff's] catalogs and course descriptions in California; market[ing] its services to California students and educational institutions; [having] three

---

[12] *See, e.g.*, *Knight v. Delta Downs Racetrack, Casino & Hotel*, No. 2:11-CV-2124, 2012 WL 4961193, at *4 (W.D. La. Oct. 16, 2012) ("Courts in this circuit have consistently held that out-of-state gaming facilities which target their bordering neighbors have sufficient minimum contacts in the neighboring state such that they could expect to be haled into court in there."); *Nayani v. Horseshoe Entm't*, No. 3:06–CIV–01540–M, 2007 WL 1062561, at *4 (N.D. Tex. April 10, 2007) (finding that the defendant's acts of extensively advertising on Texas billboards and radio stations and directly mailing coupons and other solicitations to Texas members of its select customer club, among other things, supported a finding of general jurisdiction); *Morgan v. Coushatta Tribe of Indians of La.*, 214 F.R.D. 202, 207 (E.D. Tex. 2001) ("[T]he court concludes that this court may exercise general jurisdiction over [the defendant] based on its systematic and continuous contacts with Texas via a pervasive, systematic, and continuous local advertising campaign.").

hundred registered users and two paid subscribers in California; and maintain[ing] a highly interactive website.").

These authorities uniformly accept the conclusion that local advertising, as a standalone factor, does not meet "the demanding nature of the standard for general personal jurisdiction over a corporation." *Aero Caribbean*, 764 F.3d at 1070. A business, like PNK, is not "at home" in Texas merely because it solicits business from Texans. Meager advertising and soliciting activity will not suffice. Accepting Appellants' position and exercising general jurisdiction simply for targeted advertising would be "exorbitant," inconsistent with due process, and "would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Daimler*, 571 U.S. at 139 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *accord CollegeSource*, 653 F.3d at 1075 (explaining that a "defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts, but this is specific rather than general jurisdiction") (citations omitted). The objective is to promote predictability, not impede it. *Burger King*, 471 U.S. at 472 (stating that personal jurisdiction provides "a degree of predictability to the legal system") (citation omitted). Indeed, earlier this year, we applied the "at home" test in a case involving a casino defendant's internet presence. *Head v. Las Vegas Sands, LLC*, 760 F. App'x 281, 284 n. 3 (5th Cir. 2019). We found no general jurisdiction despite the casino defendant's website presence because no evidence was presented that would rise to the level of rendering the casino defendant "at home" in Texas. *Id.* at 284. While the contacts here are somewhat distinct from *Head*, the lack of approximate physical presence follows the same logic. *Turney*, 577 F. App'x at 660 (citing to *Daimler*, 571 U.S. at 136–39 and *Bancroft*, 223 F.3d at 1086). Appellants' targeted advertising allegations and jurisdictional

evidence do not satisfy the "at home" test.  Therefore, we cannot exercise general jurisdiction.

## IV.

For the foregoing reasons, the Southern District of Texas properly held that it lacked personal jurisdiction over PNK and appropriately transferred this action to Louisiana.  The judgment of the district court is AFFIRMED.