MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2023 ME 1
Docket:       Som-22-26
Argued:       October 5, 2022
Decided:      January 5, 2023

Panel:        STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

PREMIER DIAGNOSTICS

v.

INVITAE CORPORATION

STANFILL, C.J.

[¶1]  Premier Diagnostics appeals from an order of the Superior Court (Somerset County, *Mullen, C.J.*) dismissing its complaint for lack of personal jurisdiction over the defendant, Invitae Corporation.  Because we conclude that Maine has personal jurisdiction over Invitae in this case, we vacate the judgment of dismissal.

## I.  BACKGROUND

[¶2]  The following facts, which we construe in Premier's favor, are contained in the parties' pleadings and affidavits.  *See Fore, LLC v. Benoit*, 2012 ME 1, ¶ 10, 34 A.3d 1125.

[¶3]   Premier is a Delaware limited liability company, and its principal place of business is in Madison, Maine.  As such, Premier is a Maine resident.[1] Kelly Hall is a member and the only employee of Premier; she also resides in Madison.  A significant element of Premier's business is to use Hall to introduce pharmacogenetic testing services (PGx testing) to healthcare organizations and match them with laboratories who provide PGx testing.

[¶4]  Invitae is a Delaware corporation with its principal place of business in California.   It is a leading national provider of medical genetic testing services.  It asserts it is not registered to do business in Maine, has no registered agent in Maine, and does not own any real or personal property in Maine.  Of its 2,555 employees, six are located in Maine and work from home.   In 2020, Invitae made $1,194,409 in sales to customers in Maine, representing less than one-half of one percent of its total sales for that period.  Premier does not argue that these contacts with Maine are sufficient, without more, to confer personal jurisdiction over Invitae.

---

[1]  For purposes of personal jurisdiction, a limited liability company is a resident or citizen of the state under whose laws it is organized and of the state where it has its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (explaining that a corporation is "at home" in the state where it is incorporated and the state where it has its principal place of business); *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 337 n.10 (5th Cir. 2020) (noting that many courts apply the same "at home" test used for corporations to LLCs).  Thus, Premier is a citizen of both Delaware and Maine.

[¶5]  In June 2019, Hall was working with a healthcare system in Florida, Baptist Health (Baptist), to match it with a new PGx testing laboratory.  Around the same time, Hall started networking with a PGx testing laboratory called Genelex.  Hall corresponded with Genelex and its chief executive officer, Chris Howlett, for several months during 2019, discussing the benefits that Genelex could provide to her client, Baptist.  After some time, the Genelex team represented to Hall that if she could broker a deal between Genelex and Baptist, she would be Genelex's designated "point person" on the Baptist account.  As the point person on the account, Hall would have a host of responsibilities, including onboarding, regular evaluation, monitoring, and consulting.  Genelex formalized this representation in a letter of intent, emailed to Hall around August 21, 2019, offering to engage Premier as a consultant on various Genelex PGx accounts, including the Baptist account.

[¶6]  In September and October 2019, Hall spent considerable time cultivating the relationship between Genelex and Baptist.  Eventually, Baptist informed Hall that it had decided to partner with Genelex based on her recommendation and efforts.  For the next six months, Hall worked nearly full time to finalize the Genelex-Baptist agreement.

4

[¶7]   In January 2020, Howlett emailed Hall a proposed consulting services agreement (CSA) between Premier and Genelex; the CSA included a statement of work for the Baptist account.   Hall signed and returned the agreement about a month later.   Thereafter, Hall continued to work diligently to finalize the deal between Baptist and Genelex.   Hall did so at Genelex's request, even though Genelex had not yet signed the CSA.

[¶8]   In March 2020, with the CSA still only partially executed, Invitae announced that it had entered into an agreement to acquire Genelex.[2]   For purposes of this appeal, Invitae concedes that Genelex was thereafter acting as its agent.  On March 11, 2020, Hall emailed Howlett from her office in Maine to ask whether the acquisition would impact their pending contract and whether Premier should "explore relationships with other PGx testing labs."   In response, Howlett emailed Hall a fully executed copy of the CSA and informed her "that Invitae had confirmed that its acquisition of Genelex would have no impact on the relationship, or contract, between Genelex and Premier Diagnostics."

[¶9]   Baptist and Genelex then executed an agreement under which Genelex would provide PGx testing for Baptist.   Baptist's decision to move

---

[2] Invitae officially acquired a one hundred percent ownership interest in Genelex on April 1, 2020.

forward with the deal was "a direct result" of Hall's efforts on behalf of Premier and Genelex's "assurances that the Invitae transaction would have no impact on the relationship with Premier." Thereafter, Hall contacted Howlett multiple times to determine when her onboarding and orientation would occur as provided in the CSA. Howlett responded that his time working with Premier was limited by the Invitae acquisition, and her onboarding could not be scheduled. Genelex never onboarded Hall.

[¶10] On May 27, 2020, Hall learned from Baptist that Invitae was excluding her from onboarding meetings with Baptist by instructing Genelex to hold the meetings using Invitae employees instead of Hall and Premier. The next day, Invitae instructed Genelex to terminate the CSA.

[¶11] The complaint alleges that Invitae, through Genelex, fraudulently misrepresented to Hall that the acquisition by Invitae would not impact Premier and Genelex's agreements; fraudulently induced Premier to continue to work to finalize the Baptist deal; instructed Genelex to hold onboarding meetings with Baptist and exclude Premier from that process; and pressured and instructed Genelex to terminate the CSA after Baptist had finalized the agreement with Genelex. Premier alleges it suffered significant economic damages as a result of Invitae's conduct.

[¶12]   Based on these allegations, Premier asserted a claim of tortious interference with contractual and advantageous economic relations against Invitae, as Genelex's principal.[3]   Invitae moved to dismiss the complaint on the ground that Maine lacked personal jurisdiction over Invitae.  The court agreed and dismissed the complaint.[4]   The court's order was based on the pleadings, exhibits, and affidavits only; it did not hold an evidentiary hearing.  Premier filed a timely appeal.

## II.  DISCUSSION

[¶13]  "The term 'personal jurisdiction' refers to a court's power to bring a person into its adjudicative process."  *Fore*, 2012 ME 1, ¶ 5, 34 A.3d 1125 (alteration and quotation marks omitted).   "We review de novo whether personal jurisdiction exists."  *Id.*

[¶14]   Maine's long-arm statute "shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the

---

[3] Although the complaint purports to assert only a claim of tortious interference with contractual and advantageous economic relations, it also contains allegations asserting the elements of fraudulent misrepresentation, as outlined above. *See St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 26, 818 A.2d 995 (explaining that a defendant is liable for fraud when it "(1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage" (quotation marks omitted)).

[4] The end of the order contains a clerical error stating the court granted Invitae's motion to dismiss Premier's complaint pursuant to M.R. Civ. P. 12(b)(6), instead of M.R. Civ. P. 12(b)(2).

due process clause of the United States Constitution." 14 M.R.S. § 704-A(1) (2022). Put another way, the reach of the statute "is coextensive with the permissible exercise of personal jurisdiction under the due process clause of the fourteenth amendment." *Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 9, 735 A.2d 984 (quotation marks omitted).

[¶15] Personal jurisdiction may be either general or specific. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-80 (2017); *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919 (2011); *see also* Restatement (Fourth) of Foreign Rels. L. of the U.S. § 422 cmt. c (Am. L. Inst. 2019). A state court may establish general personal jurisdiction over an individual if the individual is domiciled in the state. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. Similarly, a state court may establish general personal jurisdiction over a corporation if the corporation is "at home" in the state . *Id.*; *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (explaining that a corporation is "at home" in the state where it is incorporated and the state where it has its principal place of business). General personal jurisdiction may also be established when the individual or corporation has continuous and systematic contacts with the state. *See BNSF Ry. Co. v. Tyrell*, 137 S. Ct. 1549, 1558 (2017). If a court has general personal jurisdiction over a defendant, it

8

"may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780.

[¶16] As discussed above, Premier does not allege that Invitae's general contacts with Maine are sufficient, without more, to confer personal jurisdiction over it. Accordingly, the issue is whether Maine has specific personal jurisdiction over Invitae.

[¶17] A state court may exercise specific personal jurisdiction over a defendant only if the suit "arises out of or relates to the defendant's contacts with the forum." *Daimler AG*, 571 U.S. at 127 (alterations and quotation marks omitted); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In other words, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations*, 564 U.S. at 919 (quotation marks omitted).

[¶18] In discussing personal jurisdiction over nonresidents, we have held that due process requires that "(1) Maine . . . have a legitimate interest in the subject matter of [the] litigation; (2) the defendant, by its conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and

substantial justice." *Bickford v. Onslow Mem'l Hosp. Found., Inc.*, 2004 ME 111, ¶ 10, 855 A.2d 1150 (alteration and quotation marks omitted); *see Bristol-Meyers Squibb Co.*, 137 S. Ct. at 1780-81. It is the plaintiff's burden to demonstrate that specific facts in the record show that the first two elements are met. *Id.* If the plaintiff satisfies its burden, "the burden shifts to the defendant to demonstrate that the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice." *Id.* When the trial court resolves a motion to dismiss after a review of the parties' pleadings and affidavits, as it did here, "the plaintiff need only make a prima facie showing that jurisdiction exists, and the plaintiff's written allegations of jurisdictional facts should be construed in its favor." *Fore*, 2012 ME 1, ¶ 10, 34 A.3d 1125 (quotation marks omitted).

### A. Maine Has a Legitimate Interest in the Subject Matter of the Litigation.

[¶19] Invitae argues that the court erroneously held that Premier made a prima facie showing that Maine has a legitimate interest in the subject matter of the litigation.

[¶20] "Maine has a 'legitimate interest' in affording a forum for its citizens to redress injuries caused by nonresidents." *Connelly v. Doucette*, 2006 ME 124, ¶ 8, 909 A.2d 221. To satisfy due process, however, a party

asserting that a Maine court has jurisdiction must present an additional interest of the state beyond merely providing Maine citizens with a forum for redress against noncitizens. *Murphy v. Keenan*, 667 A.2d 591, 594 (Me. 1995) (clarifying that Maine's interest must be "beyond mere citizenry . . . such as the protection of its industries, the safety of its workers, or the location of witnesses and creditors within its borders").

[¶21]  We have recognized that such an additional interest exists when the effect of an injury is felt in Maine.  *See Connelly*, 2006 ME 124, ¶ 8, 909 A.2d 221 (determining Maine had a legitimate interest when the citizen "felt the effects of her injury" in Maine, received treatment in Maine, and had medical witnesses and records in Maine); *Harriman v. Demoulas Supermarkets, Inc.*, 518 A.2d 1035, 1036-37 (Me. 1986) (determining Maine had a legitimate interest because, among other factors, the citizen felt the effects of his injury in Maine).  An additional interest also exists when Maine is protecting a citizen from fraudulent or tortious conduct.  *See Suttie v. Sloan Sales*, 1998 ME 121, ¶ 5, 711 A.2d 1285 (determining Maine has a legitimate interest when it is "protecting its citizens from fraudulent employment practices"); *Fore*, 2012 ME 1, ¶¶ 11-12, 34 A.3d 1125 (determining Maine had a legitimate interest in protecting the interests of a citizen and business owner when the

defendant allegedly "committed a tort or caused the consequences of a tort to occur within Maine").

[¶22]  We agree with the Superior Court that Premier met its burden of presenting prima facie evidence of Maine's legitimate interest in the subject matter of this litigation.  Premier pleaded sufficient facts to show that it felt the effects of its injury in Maine as a result of Invitae's alleged fraudulent conduct.  Thus, Maine's interest in this matter goes beyond simply providing a citizen with a forum for redress; it has an interest in protecting Premier from Invitae's alleged fraudulent and tortious conduct and its consequences.

**B.     Invitae Could Reasonably Anticipate Litigation in Maine.**

[¶23]  Premier argues the court erred in finding it did not meet its burden to show that Invitae could reasonably anticipate litigation in Maine.  We agree.

[¶24]  A defendant may reasonably anticipate litigation in a forum when it (1) "purposefully directs [its] activities at" a Maine citizen or (2) "creates continuing obligations between [itself] and" a Maine citizen.  *Fore*, 2012 ME 1, ¶ 8, 34 A.3d 1125 (quotation marks omitted).  In determining whether Invitae purposefully directed its activities at a Maine citizen, we "consider whether the defendant's conduct affected a Maine resident who was in Maine when affected by the conduct."  *Id.*

[¶25] We have held that a defendant purposefully directed his activities at a Maine citizen when he made a fraudulent misrepresentation to the Maine citizen over the telephone. *See id.* ¶¶ 2, 14. Other courts have applied this principle to different means of communication, including mail and email. *See Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972) (mail); *David v. Weitzman*, 677 F. Supp. 95, 97-98 (D. Conn. 1987) (mail and telephone); *Natalia v. Tax Credits, LLC*, No. 15-270, 2016 U.S. Dist. LEXIS 96953, at *5-8 (D.R.I. July 25, 2016) (email); *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 919 (6th Cir. 2019) (telephone, text, and email). In holding that mailing a fraudulent misrepresentation into Massachusetts was purposeful availment sufficient for personal jurisdiction, the First Circuit noted: "We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into that state bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger." *Murphy*, 460 F.2d at 664. We believe the same logic applies here. Email and internet communications are used every day in the ordinary course of business. We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to

Maine's jurisdiction when it makes a fraudulent misrepresentation to a Maine citizen via telephone but not when it emails a fraudulent misrepresentation to a Maine citizen in Maine.

[¶26] Here, Premier alleges that Invitae, through its agent Genelex, made a fraudulent misrepresentation regarding the CSA to Premier through email while Premier was in Maine. It further alleges that, as a result, Premier suffered damages. Invitae's email communication made through its agent, like the telephone communication in *Fore*, was a fraudulent misrepresentation directed at a Maine citizen who was in Maine at the time of the communication. Given this, we conclude that Invitae purposefully directed its activities at a Maine citizen.

[¶27] In addition, a contract constitutes a continuing obligation sufficient to support the exercise of personal jurisdiction when there is "ongoing contact between the parties with the expectation of conducting future business." *Murphy*, 667 A.2d at 594-95 (holding a warranty provision in a contract for the sale of a boat between a New Hampshire citizen and a Maine citizen was not enough to establish continuing obligations); *see Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1192 (Me. 1993) (holding the defendant had continuing obligations to a Maine citizen when it contacted the

citizen with regard to their existing contract, and the relationship was "not the result of unilateral action by" the Maine citizen); *Caluri v. Rypkema,* 570 A.2d 830, 831-33 (Me. 1990) (holding the defendant had continuing obligations to a Maine citizen when it hired her as its representative and she was actively working on its behalf).

[¶28]   Here, Invitae created continuing obligations between itself and Premier when its agent, Genelex, executed the CSA on March 11, 2020, upon Invitae's approval.  The CSA and accompanying statement of work stated that Premier would provide consulting services for Genelex in the future on an ongoing basis.  Further, the agreement was not the result of Premier's unilateral action; rather, it was the product of ongoing negotiations and discussions between the parties.  Thus, Premier alleged sufficient facts to show that Invitae created ongoing obligations between itself and Premier.

[¶29]   In sum, Invitae purposefully directed activity at Premier and created continuing obligations between itself and Premier.  Accordingly, Invitae could have reasonably anticipated litigation in Maine.

C.   **Maine's Exercise of Jurisdiction Comports with Traditional Notions of Fair Play and Substantial Justice.**

[¶30] The Superior Court concluded that there was no personal jurisdiction because Premier failed to show that Invitae could reasonably

anticipate litigation in Maine. As a result, it did not address the third element: whether Premier demonstrated that the exercise of jurisdiction over Invitae comports with traditional concepts of fair play and substantial justice. We need not remand for the court to consider that element, however, because Invitae has conceded that if Premier has met its burden on the first two elements, it is reasonable to require it to defend the action in Maine, and the exercise of personal jurisdiction over it comports with traditional notions of fair play and substantial justice. *See Fore*, 2012 ME 1, ¶ 16, 34 A.3d 1125. In conclusion, all the due process requirements are met, and the court has specific personal jurisdiction over Invitae. We therefore vacate the dismissal of Premier's complaint.

The entry is:

> Judgment vacated. Remanded for further
> proceedings consistent with this opinion.

---

Braden M. Clement, Esq. (orally), and Theodore A. Small, Esq., Skelton, Taintor & Abbott, Lewiston, for appellant Premier Diagnostics

Roy T. Pierce, Esq. (orally), Jensen Baird, Portland, for appellee Invitae Corporation

Somerset County Superior Court docket number CV-2021-29
FOR CLERK REFERENCE ONLY